HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OCEAN GOLD SEAFOODS INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C18-5425JLR<br><br>ORDER |

## I. INTRODUCTION

THIS MATTER is before the court on Defendant Hartford Steam Boiler Inspection and Insurance Company's ("HSB") Motion to Dismiss Count Six (Reformation—Mutual Mistake) of Plaintiffs Ocean Gold Seafoods Inc. ("Ocean Gold"), Ocean Cold, LLC ("Ocean Cold"), and Ocean Protein, LLC's ("Ocean Protein") (collectively, "Ocean Companies") second amended complaint. (Mot. (Dkt. # 141).) The case involves an insurance coverage dispute. Ocean Gold claims that it and HSB intended that the HSB policies Ocean Gold purchased would provide coverage for its

sister corporations, Ocean Cold and Ocean Protein. HSB argues that Ocean Gold has failed to plausibly plead the elements of a reformation claim based on mutual mistake under Federal Rule of Civil Procedure 12(b)(6) and failed to plead such facts with particularity as required by Rule 9(b). The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES HSB's motion.

## II. BACKGROUND.

The facts were detailed in the court's prior order (6/22/20 Order (Dkt. # 138)) denying HSB's Motion for Summary Judgment (*see* 1st MSJ (Dkt. # 74)) and granting Ocean Gold's Motion for Leave to Amend its complaint (MTA (Dkt. # 76)).[1] The contract reformation claim that is the subject of the current motion was added in response to that order.

Ocean Gold is a custom seafood processor. It has two subsidiaries, or sister companies—Ocean Cold and Ocean Protein. Ocean Gold's primary facility is located on Yearout Drive in Westport, Washington. Ocean Gold owns the fish processing equipment at the Yearout location, but Ocean Cold owns the cold storage facility and its extensive refrigeration equipment. Ocean Protein owns a separate fish meal processing facility in Hoquiam, Washington

---

[1] The prior order also resolved a separate pair of summary judgment motions, on whether the loss was caused by a covered accident. (*See* 2d MSJ (Dkt. # 87); 3d MSJ (Dkt. # 90).) The facts in the current order were gleaned from the comprehensive record supplied in connection with the prior motions.

Ocean Gold purchased a series of HSB "Equipment Breakdown" property insurance policies beginning in 2008. These are not "all risk" policies; they are "named peril" policies, providing coverage for "fortuitous events [accidents] causing direct physical damage to covered property." (Anderson Decl. (Dkt. ## 22-1, 22-2).) The policies were effective from August 29 of one year to August 29 of the next. Each policy names Ocean Gold as the Named Insured, and the Yearout facility as the covered location. They do not name Ocean Cold or Ocean Protein.

In May 2016, Ocean Gold hired a contractor to recover and clean 9,000 pounds of R-22 Freon refrigerant from one of its systems. Ocean Gold planned to, and did, place the recovered Freon into Ocean Cold's refrigeration system. Over the summer of 2016, the Ocean Cold facility began leaking and losing its ability to hold the required negative 20-degree Fahrenheit temperature. On September 2, 2016, Ocean Cold moved the product out of a portion of the cold storage facility because the refrigeration system could not keep the facility cold enough to preserve its contents—millions of pounds of frozen seafood. HSB claims this was a business decision, not the result of an accident. Ocean Gold claims it was forced to move the product to avoid spoilage and a greater loss. Some of that seafood was apparently moved to Ocean Protein's facility in Hoquiam.

Ocean Gold made a claim under its HSB Equipment Breakdown policy a week later. HSB investigated and determined that the system had suffered a "breakdown" and could not maintain the required temperatures. HSB's investigator also determined that a 2001 Teikoku liquid motor pump had catastrophically failed. HSB did not pay or deny

the claim, or inform Ocean Gold of its coverage position, for more than a year. Ocean Gold hired its own claim consultant to investigate the loss and assist with the claim.

In October 2017, HSB paid Ocean Gold $717,000 for the failed liquid motor pump and for related business interruption and extra expenses losses under its policies.[2] In April 2018, HSB denied coverage for any other losses. Ocean Gold sued a month later, asserting breach of contract and extra-contractual bad faith claims. (Compl. (Dkt. # 1).)

HSB moved for summary judgment on its defense that its insured, Ocean Gold, did not own or control the damaged Ocean Cold refrigeration system, and that Ocean Cold was not a named insured under HSB's policies. (*See generally* 1st MSJ.) Ocean Gold sought leave to amend, to add a Washington Consumer Protection Act claim and to add Ocean Cold and Ocean Protein as plaintiffs. Ocean Gold argued persuasively that HSB did not raise the "named insured" defense when the claim was tendered in 2016, or in its 2018 coverage denial letters. It argues now that HSB's claims file does not reflect that the issue was analyzed, discussed or even noticed, and that HSB did not raise it until Rule 30(b)(6) depositions earlier this year. (Resp. (Dkt. # 147) at 3.)

The court denied HSB's motion for summary judgment because there was evidence from which a reasonable jury could find that Ocean Gold and HSB intended the HSB policies to cover all of Ocean Gold's entities, locations, and equipment. (6/22/20

---

[2] Two HSB policies are at issue because the events took place between May and September, and the policy renewed in August. Ocean Gold demonstrated in response to a prior summary judgment motion that it had purchased similar HSB policies each year since 2008. HSB now claims that its policies were not identical, but does not articulate how they differ or how those differences relate to the issues in the case or on this motion.

1  Order at 11.) This evidence included the fact that, in 2010, HSB issued an endorsement
2  adding Ocean Cold and its Yearout refrigeration facility to that year's policy, without
3  changing the premium it charged for it. That facility remained on the policies' "Schedule
4  of Locations" in subsequent years, though Ocean Cold was not listed as a named insured
5  on subsequent policies. Most compellingly, on the loss that is the subject of this lawsuit,
6  HSB paid more than $700,000 for damage caused by the liquid pump motor. Ocean
7  Cold, not named insured Ocean Gold, owned—and continues to own—the pump motor
8  and the pump system. The court concluded there was evidence from which a reasonable
9  jury could find that both parties were honestly mistaken about who and what was insured.
10 (*Id.*)

11     The court also granted Ocean Gold's motion to amend, concluding that
12 amendment would not prejudice HSB and that the claim for coverage for Ocean Cold and
13 Ocean Protein would not be futile. As to the latter point, the court specifically concluded
14 that Ocean Gold's claim that both parties intended to include the other entities and
15 locations was "plausible on its face, and could survive a Rule 12(b)(6) motion to
16 dismiss." (6/22/20 Order at 7.)

17     Ocean Gold filed its second amended complaint ("SAC") in June 2020. (SAC
18 (Dkt. # 139).) Ocean Cold and Ocean Protein are now plaintiffs. The Ocean Companies'
19 SAC alleges most of the facts described above. It includes a claim to reform the contract
20 to include Ocean Cold and Ocean Protein and their respective locations on the policy,
21 based on what they claim was a mutual mistake about who was insured under the HSB

policies they purchased. The claim relies on these factual allegations, and is set forth below:

### COUNT SIX
### REFORMATION -MUTUAL MISTAKE

52. At all relevant times, the parties understood and intended that the Policy would provide equipment breakdown coverage to Plaintiffs Ocean Cold, LLC and Ocean Protein LLC and the equipment and risks at those locations.

53. Indeed, during the underwriting process and in the Policy declarations, Defendant Hartford included Ocean Cold, LLC's address 1601 Yearout Drive, Westport, WA as a covered location and included the values at the Yearout location in the $37 million "Equipment Breakdown Limit" shown in the Policy Declarations. Hartford also issued an endorsement under a prior policy adding Ocean Cold, LLC as a named insured upon request, without charging any additional premium for the change.

54. At all relevant times, it was the intent of Hartford, Ocean Gold, Ocean Cold, LLC, and Ocean Protein LLC to include Ocean Cold, LLC and Ocean Protein LLC as named insureds and to cover their respective locations under the policy issued by Hartford.

55. Such failure to include Ocean Cold, LLC and Ocean Protein LLC as named insureds and covered locations was the result of a mutual mistake and does not represent the intent of the parties.

56. That by virtue of the aforementioned scrivener's error and/or mutual mistake of the parties, the policy issued by Hartford, as well as all prior policies, should be reformed in a manner consistent with the mutual intent of the parties, to wit: Ocean Cold LLC and Ocean Protein LLC are named insureds under the policy, and their respective addresses (Ocean Cold, LLC, 1601 Yearout Drive, Westport, WA; and Ocean Protein LLC, 518 22nd Street, Hoquiam, WA) are included as covered locations.

(SAC at 12.)

HSB now asks the court to dismiss this claim under Rules 12(b)(6) and 9(b), arguing that the SAC does not plausibly or particularly state a claim for contract reformation based on a mutual mistake. It intentionally and unusually frames its motion as a challenge to the Ocean Companies' pleading, not to the evidence that the court has already viewed, analyzed, and discussed.

Ocean Companies argue HSB's motion is frivolous, and that it "flies in the face" of the court's prior order. They point to all the evidence submitted and considered on the prior round of motions, and the court's conclusions about what that evidence showed. It argues its SAC does state a plausible reformation claim and that it does so with the requisite particularity. It argues that under Rule 12(d), if the court considers the evidence in support of its claim, HSB's motion should be converted to a summary judgment motion. Finally, Ocean Companies point out that the corrective for a complaint that fails to state a plausible claim is amendment, not dismissal, unless the deficiencies cannot be cured as a matter of law.

HSB replies that the evidence Ocean Gold cites to "back fill" the gaps in its complaint are insufficient, and emphasizes that it does not seek summary judgment. Implicit in this argument is a concession that there is evidence supporting a reformation claim, but HSB claims the SAC is insufficiently pled and should be dismissed. If the court converts the motion to one for summary judgment, HSB asks the court to permit it to provide its own evidence on the issue.

### III. DISCUSSION.

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544).

On a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in

dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

To state a plausible claim for reformation based on mutual mistake, the party seeking reformation must plead that (1) both parties to the instrument had an identical intention as to the contract's terms, (2) the executed writing materially varies from that identical intention, and (3) reformation to express that identical intention will not unfairly affect innocent third parties. *See Leonard v. Washington Emp., Inc.*, 461 P.2d 538, 543 (Wash. 1969). "A mutual mistake occurs if the parties had the same intentions but their written agreement does not accurately express their intentions." *GLEPCO, LLC v. Reinstra*, 307 P.3d 744, 752 (Wash. Ct. App. 2013). Under Washington law, mutual mistake can be grounds for reformation, an equitable remedy that brings a writing that is materially different from the parties' agreement into conformity with that agreement. *Id*. "A party seeking reformation must prove the facts supporting it by clear, cogent, and convincing evidence." *Id*. (citing *Akers v. Sinclair*, 226 P.2d 225, 231 (Wash. Ct. App. 1950)).

The court is not inclined to convert HSB's motion into one for summary judgment, and it need not do so to resolve the motion. The straightforward issue is whether the SAC plausibly states a reformation claim, and whether it does so with enough particularity to satisfy Rule 9(b). Even if it does not, the follow-on issue—whether the SAC could be amended to plausibly state a reformation claim—has already been decided.

The court previously ruled that there is evidence from which a reasonable jury could find that the parties were mistaken about the named insureds under the policy.

HSB has yet to explain, for example, why it paid for Ocean Cold's pump motor if it did not intend to insure that entity or that equipment. HSB does not dispute that Ocean Companies' reformation claim could be so amended, even if it also argues that it could attack the evidentiary support for such an amended claim under Rule 56 in yet another round of motions practice.

As Ocean Companies accurately point out, the purpose of Rule 9(b)'s specificity requirement for claims based on mistake is to "afford defendant fair notice of the plaintiffs claim and the factual ground upon which it is based." (Resp. at 13 (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d. Cir. 1990)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (fraud allegations "must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge[.]"). The SAC's factual allegations are not as detailed as those in the briefs, and, at times, are conclusory. If HSB's motion was aimed at an initial complaint containing only the facts described above, the court may have been inclined to order Ocean Companies to amend their complaint to more fully flesh out the factual allegations supporting their claim that the parties were mutually mistaken about who and what was covered under the HSB policies. But HSB's motion to dismiss follows discovery and three prior motions for summary judgment. (*See* 1st MSJ; 2d MSJ; 3d MSJ.) The court has already reviewed a banker's box of exhibits and testimony. HSB is fully aware of the facts upon which Ocean Companies' claim is based, and upon which the court previously

ruled.[3]  Indeed, HSB is already prepared to produce new and different facts in opposition to Plaintiffs' evidence.  (*See* Reply (Dkt. # 155) at 3, n.2 ("As noted in HSB's opening brief, evidence outside the four corners of the SAC establishes a lack of mutual intent to include Ocean Cold and Ocean Protein as named insureds.").)

There is little to be gained in inviting another amended complaint and perhaps another motion on this issue.  The dispute is not about the allegations, it is about the facts, and it is not amenable to resolution under Rule 12(b)(6).  Thus, the court DENIES HSB's motion to dismiss.

### IV. CONCLUSION

For the reasons set forth above, HSB's motion to dismiss Count Six (Reformation—Mutual Mistake) of Plaintiffs' second amended complaint (Dkt. # 141) is DENIED.

IT IS SO ORDERED.

Dated this 9th day of November, 2020.

JAMES L. ROBART
United States District Judge

---

[3] To the extent HSB's motion is effectively one for reconsideration of the court's prior Order, it is denied as untimely under Local Rule 7.  *See* Local Rules W.D. Wash. LCR 7(h)(1).